Kyle Spuhler and Nicole Spuhler v. State Collection Service, 19-2630. We, again, have pretty much the same issue but from a different posture. And, Mr. Newman, are you available? Good morning, Your Honor. Good morning. May it please the Court, Patrick Newman of Bassford-Renley, appearing on behalf of the appellant, State Collection Service, Incorporated. As Your Honor mentioned, there is some overlap in the issues presented in this appeal, the prior matter involving the Bazille consumer. The core of the question for the Court is what is required under the FDCPA for a debt collector to disclose the amount of the debt to a consumer. And I will touch on that, but as Judge Easterbrook inquired in the prior matter, I'd first touch on the jurisdictional issue. This case does come to the Court on a different procedural posture. There is a developed record in the District Court, so we're not merely questioning whether the Spuhlers used the right language to confer standing under Article III. Instead, we are actually looking at what happened in discovery and what was set forth in opposition to our motion for summary judgment. Recall that the Spuhlers submitted three affidavits to the District Court, two in support of their motion for class certification and one in opposition to our motion for summary judgment. One of those affidavits spoke to any type of injury or harm. They didn't speak to any lack of information in the challenge letter or that the Spuhlers would somehow approach payment of the debt differently or that they may or may not have contacted State Collection had some other disclosure been included. And likewise, we took depositions of both of the Spuhlers, and neither one of them was able to articulate frankly claims, the basic facts at issue in this case, let alone any type of injury or harm that flowed from the challenge letter. And certainly, hearkening back to Judge Easterbrook's line of inquiry in the prior matter, there was no allegation that they would have prioritized payment of their debt differently had an interest disclosure been made. So to be blunt, any argument that my friend Mr. Stern might make, and I anticipate that he will on that same line, is completely speculative. The record below is completely devoid of any evidence that the Spuhlers might point to to demonstrate an injury in fact. So could I just interject something, Mr. Newman, because Mr. Spuhler in particular didn't seem to know much about this case at all. But just because one consumer may have failed in an effort to show injury in fact in one case wouldn't necessarily mean in some other case filed at a different time, different people, somebody else might be able to show the kind of effect on decision making or for all I know, a different type of concrete injury. So your argument, I take it, is specific to the facts of this case. The answer to that question is yes, Your Honor, but I want to clarify that that is on two points. We are of a mind with the appellee in Bazille that there was a pleading failure in this case. If you look at the complaint, as well as the amended complaint, there is nothing pledged in terms of any injury or harm. Why is pleading relevant at summary judgment? My point only is that a failure to plead is sufficient grounds to dismiss for lack of jurisdiction, but to your point, Your Honor, we have different points of view. We're at summary judgment. We depend on the proofs. The Supreme Court has said about standing that first injury has to be adequately alleged and then injury has to be proved with evidence, right? There may be a third stage at the 12B1 hearing if there is one, but we're now at the summary judgment stage, so what was in the complaint can't really be conclusive. I think to your point, Your Honor, yes, what we're looking at now, the operative issue on this appeal is at summary judgment, and my point is that no, on the facts of this case, we do not have plaintiffs that demonstrated standing. There's not anything in the record from which they could make that showing. They failed to do that, and that's a basis to reverse the district court on a jurisdictional basis. Regarding the FDCPA's requirement of disclosing the amount of the debt, it is a fundamental premise of a credit-based economy that failure to pay or maintaining an unpaid balance of any type, one consequence flowing from that is the potential that the balance may go up due to the accrual of interest. Certainly any consumer that is capable of incurring that type of obligation and being held responsible to repay it would understand that, and our position is that the unsophisticated consumer, the objective consumer that this court uses to determine whether a collection correspondence is potentially deceptive or misleading would also understand that. As I believe my colleague mentioned in the Bazille matter, the unsophisticated consumer, yes, is trusting and naive and perhaps uninformed, but nonetheless has rudimentary understanding of the financial world and capable of making basic decisions. Mr. Newman, all of that may be true. It's in some tension with what Ms. Klander was saying in the previous argument, that when Ms. Bazille got the letter saying $92 in sum, she had no reason to think that there was any interest accruing at all. So why doesn't full disclosure include at least some, you know, interest is going to accrue on this obligation or interest is not going to accrue on this obligation? Just a sentence. Maybe not even all the bells and whistles that Miller was talking about because people don't know when or how much interest will be. And, of course, there are instances, the bankruptcy judges are experienced with this, where the interest rates are so high that what starts out as, you know, $1,000 obligation balloons up into many times that as 18% to 20% interest compounds over and over again. So, yes, it's a credit economy, but surely it's important that disclosures be made in a way that people will understand. I agree, Your Honor, and here is our position, is that the statute requires a statement of the amount of the debt. That is what Congress stated. Congress understood when it enacted the FDCPA that interest could accrue on consumer debt and could have codified a requirement. Well, you're interpreting, are you interpreting amount of the debt as a phrase referring to the principle or do you interpret amount of the debt in some other way? I interpret it the way that this court said it in Miller and then the way that Judge Easterbrook posited it in Baker v. AmeriCollect, which is the complete amount of the debt as of the date the letter was sent. If it is an instance in which interest is accruing, the debt collector satisfies 1692 GA1 by taking the principle, adding the balance amount, and stating that amount as the amount due. That's what state collection did in this matter, and that's why our position is that state collection complied with the statute. Okay. If you'd like to save the rest of your time for rebuttal, this would be a good time to do it. I would please. Thank you. All right. We return to you, Mr. Stern. All right. I want to see if I can, I can at least briefly address this, this standing issue, because there's I think that the procedural substantive distinction and the invasion of a substantive right, which Spokio said by itself can constitute the harm, a concrete harm, just the invasion of the right. Well, but let me be, let me be clear. I mean, in, in this particular case and the facts do vary from case to case. I'm looking at what Mr. Spooler said in particular makes it sound a lot like the Casillas case. I mean, it doesn't seem as though any information would have motivated Mr. Spooler to do anything different from what he was doing. He hadn't even seen the letter until the deposition and he didn't know what it said. And I mean, it seemed like it was utterly beside the point to him and surely that doesn't satisfy article three. Well, I mean, and I know this decision I'm about to refer to was, was long before Spokio, but the court's decision in, in part, Bartlett versus Heibel, talked about that where a consumer receives a collection letter, and in that particular case had not even read the letter, but nevertheless, as long as his claim was only for statutory damages, he was entitled to proceed with that case. As you're implying Spokio changed that, you know, a bare procedural violation isn't enough. You need to show that the person suing has some actual injury, actual or imminent. I mean, there are a whole lot of other phrases you can put around it, but a real injury. And it does the record summary judgment record leave any doubt about the existence of actual injury for the spoolers? Well, I, I, our position is yes, because I, I think presupposed in the issue of, of showing something more is that the invasion of a substantive right is not sufficient for purposes of standing. Who else could assert a claim when if, if this debt collector owed this consumer a duty to disclose information and it didn't disclose that information to this consumer, who else would have standing to assert that claim? Well, it just, it weeds the cases down to the ones in which these procedural violations actually mattered to people. So the set of possible cases to litigate isn't going to be 100% of the set of procedural violations. But I mean, I'm sure lots of us, you know, every day see things that look like violations of the law. And as somebody who pays a lot of attention to the law, it's kind of annoying to me to see people do that, but I can't just sue because I see a violation. Yeah. But the difference is not that you saw a violation. The difference is that there was a breach of a duty that the statute created on this debt collector that it owed to this consumer and this consumer's rights that were violated. And this consumer then obviously was, was consulting with counsel. This consumer then put, in this case, their names on a federal class action complaint that is forever enshrined in the public record and, and, and undertook the willingness to prosecute this case on behalf of the class. Counsel, this sounds, this sounds exactly like what the ninth circuit said in Spokane, that if there's a violation of a legal right, then they're standing. And it is of course, exactly what the Supreme Court rejected and said there needs to be some concrete particularized person specific injury. So instead of just standing on, there's a violation, so they're standing. Could you articulate the concrete injury in this case, given that at the summary judgment record, the plaintiffs seem to have said there's nothing in this letter that matters. I guess the fundamental distinction in terms of plaintiffs view on, on this is that the ninth circuit in Spokane was dealing with as the question of a procedural violation. And we're not talking about a procedural violation. Counsel would you know, humor me, humor me, humor me counsel and assume that the Supreme Court meant what it said, that there must be concrete injury. Could you explain to me what the concrete injury suffered by these plaintiffs is on this summary judgment record? It's the Supreme Court in Spokane. No counsel. I'm not asking you counsel. Listen to the question. I am not asking you what the Supreme Court said in Spokane. I am asking you to explain what concrete injury these plaintiffs suffered as demonstrated in the summary judgment record. So just to help you, you know, the, if this summary judgment record showed the kind of triage of bills that we were talking about before, that would be one thing. Maybe if this summary judgment record showed that somebody's credit score took a hit because of a bad decision, maybe, I don't know. I'm not making any rulings here, but that, but these are the kinds of specific things that could happen to somebody who is in the middle of getting done by a bill collector and not being told the correct things in the letter that the bill collector sends. So very practical, down to earth, you know, what happened? Okay. So the, in the, there's deposition testimony from Nicole Spuler, which was in the excerpt reports in the defendant's appendix was omitted. I'm referring specifically now to the district court document, 56-2 at pages 17 and 18, which are there's four deposition pages per page at 61 to 63 where Ms. Spuler articulates her efforts to investigate and understand the nature of what this these debts that were at state collection was attempting to collect in light of the fact that there had been prior litigation about these debts and her attempt to determine what insurance or coinsurance had been paid as a result of these letters. That's, that's the information. So you're saying that the lack of disclosure in these letters complicated her task of undertaking this investigation and therefore required her to expend resources that she wouldn't have had to expend if, if the right disclosures had been there? Yeah. And that's what I'm contending, but bearing in mind that Judge Joseph had already ruled on standing and held that there was standing so that at the summary judgment level, the defendants had not renewed a or asserted a factual challenge to stand. She didn't say that the calls were placed because she was confused about the amount owed, did she? Well, she was, yes, she was confused about the amount owed to the extent that she couldn't, she was trying to, she wanted to get be able to get the records to determine what was paid and what was not paid. And I think that directly goes to the amount that's owed. I'd like to also get back to, you know, whether there would be standing, you know, if it were addressed today in Bartlett versus high ball, but that case talks about the cause of action that this, because the standard is the unsophisticated consumer. It doesn't matter for purposes of liability, how the plaintiff responds to it. And we, our position is that Spokio specifically talks about that the harm, a concrete harm is satisfied by the invasion of a, a substantive right. We're not talking about procedural by giving a notice. We're talking about information that misleads consumers as to the nature of the balance of what they owe, the amount of the debt, and that that invasion like a common law invasion, someone invades, you know, trespasses and it causes no actual damage to the property. But the common law has historically held that the court talks about for a substantive intangible harm that you look to both the common law historically, what type of claims were similar and, and also giving deference to Congress's ability to elevate to, to giving rights that didn't previously exist. And our position is that this is precisely what it is. Basically E type claims false misleading and, and deceptive representations. Um, and under the case law development requires that it be material. Okay. And that happens. Yeah. Am I out of time? You are out of time, Mr. Stern. So, uh, thank you very much. And, um, we have a little bit of rebuttal time for Mr. Newman, one minute, 43 seconds. Thank you, Your Honor. Um, to the point about Ms. Fuller's deposition, there was no estimony from her regarding how the accrual of interest or disclosure, uh, or lack thereof regarding interest impacted her in any way, shape or form. Um, those depositions were quite remarkable in that, um, the opposing counsel either objected to a number of our inquiries during that deposition on the grounds of privilege, uh, basically instructing their client not to answer these questions. And when finally pinned down on, on a question would answer that they had no personal knowledge on any of these topics. So it is, it is remarkable to me that the position of, of the appellee here is that Ms. Fuller articulated a concrete injury. In fact, in the depositions, um, those depositions in their entirety are in the record and, uh, read together. I don't think you can find anywhere that she did that. Um, in a concluding point, I w I would say that, um, it is state collections position that it complied with 1692 GA one and did state the amount of the debt as this court said is required in Miller. And as judge Easterbrook posited in the acre matter, and an additional distinguishing factor from Avila, uh, we, we disagree that this, um, received problem. Um, the hypothetical that Mr. Stern gave was that you could have a $50 debt and then 49 cents could accrue between the time the consumer receives the letter and then actually pays. And then that could balloon into some other debt that is sold or continue to be collected on. We don't have those facts in this case. That is pure speculation that that is what would happen. Um, somewhat familiar with the collection industry. It'd be very surprising to me to learn that that is something that actually happens. Uh, that does not make business sense that a collector would continue to chase the 49 cents when presumably it has a thousand other accounts worth the $50 that need to be collected on collectors, uh, by their nature are quite good at finding the money. So it doesn't make sense that they would chase that 49 cents. Um, likewise, I do think pursuant to certain state laws, we don't have this in this case necessarily, but if a consumer received a letter that said $50 and then paid the amount paid the $50, they may have an argument that they've satisfied the debt. All right. I think we're going to have to leave it there, Mr. Newman. Uh, but thank you for your argument. Thank you, Mr. Stern. Thank you everybody. We will take the case under advisement and the court will be in recess.